IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DOROTHY BILLS,

          Plaintiff,

v.                               CIVIL ACTION NO.   2:22-cv-00093

WVNH EMP, LLC, and
LANETTE KUHNASH,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Motion for Summary Judgment* (Document 20), the *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* (Document 21), the *Plaintiff's Amended Response to Defendants' Motion for Summary Judgment, with Memorandum of Law* (Document 25),[1] and the *Amended Reply in Support of Defendants' Motion for Summary Judgment* (Document 28), as well as all attached exhibits.   For the reasons stated herein, the Court finds that the motion should be granted.

**FACTS**[2]

The Plaintiff, Dorothy Bills, began working as a Certified Nursing Assistant (CNA) at Worthington Healthcare Center in Worthington, West Virginia, in October 2018.   Worthington is

---

1 The Plaintiff initially filed a brief response contending that the motion for summary judgment should be denied because it was not accompanied by a memorandum of law, although the Defendants had filed such a memorandum. The Court permitted the Plaintiff to file a substantive response, and all references to the Plaintiff's response refer to that substantive response.
2 Most of the facts outlined herein are not disputed.   The Court will resolve factual disputes in favor of the Plaintiff as the non-moving party for purposes of summary judgment.

operated by Defendant WVNH, and Defendant Lanette Kuhnash was the Director of Nursing at all relevant times.

In July 2019, Ms. Bills and other staff were responsible for caring for patient John Doe. John Doe had very limited mental capacity and could not control his actions or understand their effect. He was sexually aggressive, and staff were told to enter his room in pairs. Ms. Bills was in his room alone while another nurse took her break, and she moved close to his bed to chat because she is hard of hearing. She leaned closer to him to provide him with water and help keep him in bed when he began to sit up. He reached out and "touched [her] breasts, he touched [her] vaginal area." (D. Bills Depo. at 58::15–16) (Document 25-2.) John Doe touched her inappropriately on multiple occasions while she was providing care, and Ms. Bills smacked his hands in response, telling him that it was not nice to touch her. Another coworker told her that smacking his hands was abuse and advised her to report the incident. Worthington has a policy prohibiting physical abuse, including any form of corporal punishment, defined as physical punishment used "as a means to correct or control the resident's behavior." (L. Kuhnash Declaration at ¶ 3–4.) (Def.'s Ex. B, Document 21-2.) The policy specifically prohibits slapping of hands. (*Id.* at ¶ 4.)

In a handwritten incident report dated July 18, 2019, Ms. Bills wrote that the patient "kept trying to touch me in wrong places…I, Dorothy, smacked his hands and he left me alone until I provided care for him again, I smacked his hands again and he left me alone while providing care each time. I did not smack him hard enough to hurt him, just like you would a child for misbehaving." (D. Bills Incident Report, July 18, 2019) (Def.'s Ex. F, Document 21-2.) In a witness statement prepared by Lanette Kuhnash and another supervisory employee, Ms. Bills

2

stated that after John Doe touched her breast, she smacked his hand and told him that "wasn't nice." (D. Bills Witness Statement, attached as Def.'s Ex. G) (Document 21-2.) Ms. Bills indicated that she had smacked his hands three separate times for groping her, again comparing it to disciplining a child. (*Id.*) Ms. Kuhnash sent the report to a social worker, who filed a report with the West Virginia Department of Health and Human Services (DHHR). Ms. Kuhnash also suspended Ms. Bills' employment.

Ms. Bills received a letter dated January 31, 2020, from the Office of Health Facility Licensure and Certification stating that the allegation of neglect regarding the July 18, 2019 incident had been dropped. She allowed her CNA license to expire and did not seek to renew it after the investigation was completed. Ms. Bills testified that she did not hear anything further regarding her employment status from Ms. Kuhnash or anyone else at Worthington.[3] She never received a termination letter, although the incident report Worthington submitted to the DHHR on July 22, 2019, indicates she was terminated, and a Worthington employee entered her termination into the computer system on August 1, 2019. Ms. Bills indicated that she learned that she had been terminated only after filing this lawsuit.

Ms. Bills initiated this action with a complaint filed in the Circuit Court of Wood County, West Virginia, on or about December 15, 2021. She filed her *Amended Complaint* (Document 1-1) on February 9, 2022, and the Defendants removed the matter to federal court on February 22, 2022. She alleges wrongful termination under the West Virginia Human Rights Act, asserting that she was discharged in retaliation for resisting sexual harassment.

---

3 A WVNH employee testified that she informed Ms. Bills in person that she had been terminated sometime not long after the incident when Ms. Bills visited the facility. Ms. Bills testified that she visited the facility a few times after her suspension to visit residents and her former coworkers. Although she indicated that she inquired about when she would be able to return to work, she stated that no one informed her that she had been terminated.

**STANDARD OF REVIEW**

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at

*3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendants contend that Ms. Bills violated the facility's policy against resident abuse by "[s]macking a resident's hands as a disciplinary measure." (Mem. at 3.) They argue that her retaliatory discharge claim fails as a matter of law because hitting a patient is not a protected activity. Even if she could establish a prima facie case of retaliatory discharge, they contend that they have come forward with a legitimate nondiscriminatory reason for her discharge: Ms. Bills violated their policy against resident abuse. They argue that there is no evidence that their stated reason for terminating her employment is pretextual.

The Plaintiff argues that "smacking the patient's hands away after he groped her breasts and vagina is protected activity." (Resp. at 5.) She reasons that unwanted sexual groping

5

violates the WVHRA, and she smacked his hands in response to that violative conduct. She further emphasizes that the DHHR dropped the case, "finding that no abuse had occurred" and "exonerating" the Plaintiff. (*Id.* at 6.) The Plaintiff argues that the implication of the Defendants' position is "that if one of their employees is sexually assaulted by a patient, that the employee should submit to the patient's sexual advances or molestation lest they be terminated." (*Id.* at 7.) She contends that she smacked John Doe's hands away as he was groping her, rather than as a punitive measure, and "[t]o the extent that Defendant is enforcing a policy that would prevent the Plaintiff from resisting sexual harassment in this manner, that policy is incompatible with the law." (*Id.*at 8.)

Unlike most wrongful termination cases, there is no dispute here as to why the Defendants terminated Ms. Bills' employment. The Defendants terminated her employment for repeatedly smacking a patient who groped her. The Plaintiff seeks to portray her action as smacking his hands away from her to halt the inappropriate touching, but Ms. Bills clearly explained in her initial incident report, in her witness statement soon after the incident, and in her deposition, that she smacked his hands and scolded him to "reprimand" him, "like you would a child misbehaving." (D. Bills Depo. at 62:9 and 61::1–2.) Thus, the only issue to be resolved is whether the WVHRA prohibits an employer from firing an employee who physically punishes a patient for sexually harassing her.

The WVHRA provides that it is an unlawful discriminatory practice "for any…employer…to engage in any form of reprisal or otherwise discriminate against any person because he or she has opposed any practices or acts forbidden under this article or because he or she has filed a complaint, testified, or assisted in any proceeding under this article." W.Va. Code

6

§ 5-11-9(7)(C). The "practices or acts forbidden under this article" include sexual harassment. "To establish a claim for sexual harassment under the West Virginia Human Rights Act, W.Va.Code, 5–11–1, *et seq.,* based upon a hostile or abusive work environment, a plaintiff-employee must prove that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Syl. Pt. 5, *Hanlon v. Chambers*, 464 S.E.2d 741, 745 (W. Va. 1995).

The West Virginia Supreme Court has established the following elements to prove a retaliatory discharge claim under the WVHRA: "(1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation), (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation." *Id.* at Syl. Pt. 10. "Protected activity" "includes opposition to a practice that the plaintiff reasonably and in good faith believes violates the provisions of the Act." Syl. Pt. 10, *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183, 187 (W. Va. 2010). "The employee's opposition must be reasonable in the sense that it must be based on a set of facts and a legal theory that are plausible" and "the view must be honestly held and be more than a cover for troublemaking." *Id.*

The previous cases in which the West Virginia Supreme Court considered retaliatory discharge claims involved various forms of complaints about misconduct as the protected activity, including reports of harassment to supervisors and reports to regulatory agencies. *Frank's Shoe Store v. W. Virginia Hum. Rts. Comm'n*, 365 S.E.2d 251, 259 (W. Va. 1986) (filed a complaint

with the West Virginia Human Rights Commission); *Hanlon v. Chambers*, 464 S.E.2d 741, 753 (W. Va. 1995) (complaints of sexual harassment); *Conrad v. ARA Szabo*, 480 S.E.2d 801, 814 (W. Va. 1996) (complaints about being sexually harassed); *Kalany v. Campbell*, 220 W. Va. 50, 55, 640 S.E.2d 113, 118 (W. Va. 2006) (complaints of sexual harassment to employer and husband, who spoke with employer); *Colgan Air, Inc. v. W. Virginia Hum. Rts. Comm'n*, 656 S.E.2d 33, 42 (W. Va. 2007) (complaints of harassment and discrimination but finding no retaliatory discharge where potential pilot who was subject to harassment was forced to resign after failing a mandatory proficiency test). The West Virginia Supreme Court explained that "[t]he legislative purpose in including the antiretaliation provision was obviously to encourage people to come forward and expose unlawful employment practices and to do so without fear of reprisal." *Hanlon v. Chambers*, 464 S.E.2d 741, 754 (W. Va. 1995).

The Fourth Circuit has held that illegal actions cannot constitute protected activity under Title VII.[4] *Netter v. Barnes*, 908 F.3d 932, 939 (4th Cir. 2018) (citing *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253 at fn. 3 (4th Cir. 1998) (reviewing confidential personnel files to identify comparators was not protected activity). Further, conduct in opposition to an unlawful practice must be reasonable. *Id.* at 938.

The Court finds that Ms. Bills' actions in smacking a nursing home resident's hands and scolding him for groping her are not protected by the WVHRA. The Plaintiff has not identified any case, even outside the nursing home context, in which physical violence or physical punishment directed at an asserted sexual harasser was found to constitute a protected activity in

---

4 "We have repeatedly held that we will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result. *Hanlon v. Chambers*, 464 S.E.2d 741, 754 (W. Va. 1995).

opposition to an unlawful employment practice. Opposition to an unlawful employment practice typically involves reporting it and/or demanding that the employer correct the problem. The Court need not reach the question of whether Ms. Bills' actions legally constituted patient abuse, regardless of the DHHR's decision to drop the investigation into the matter, because it is clear that physically punishing a patient is not a reasonable means of opposing sexual harassment in the workplace.

The issue in this case is quite narrow. The Plaintiff contends that the Defendant's position would require employees to submit to sexual assaults by patients. Employees may certainly demand that their employer ensure a workplace safe from sexual harassment. The record does not establish the nature of the training provided to staff who must interact with patients who lack sexual inhibitions or exhibit other behavioral issues, or the resources and precautions available, beyond noting that staff were to enter John Doe's room in pairs. If the staff, reasonably believing that John Doe's action created an unlawful employment condition, needed additional resources or other protective measures to care for John Doe without being groped, filing complaints and demanding such resources would be protected activity. There is no factual record or legal argument to support any analysis of a healthcare facility's obligations to its employees in managing discrimination or harassment from patients, and this case is limited to the question of whether the Defendants engaged in unlawful retaliation under the WVHRA by terminating Ms. Bills' employment for smacking John Doe's hands.

It is not necessary for the Court to determine whether John Doe's actions constituted workplace sexual harassment, whether Ms. Bills' response constituted patient abuse, what obligation Worthington had to protect employees from such harassment, or the impact of the

DHHR investigation or of Ms. Bills' decision not to renew her CNA license. The parties agree that Ms. Bills was terminated for smacking a patient's hands. Smacking a patient's hands and scolding him in response to inappropriate touching is not a protected activity in opposition to an unlawful workplace practice. Therefore, Ms. Bills cannot present evidence that would permit a reasonable jury to find that she was discharged in retaliation for engaging in a protected activity under the WVHRA. The Defendants are, therefore, entitled to summary judgment.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion for Summary Judgment* (Document 20) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: December 1, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA